IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JAMES RICHARD DUDLEY,**

    **Plaintiff,**

    v.                                                **CASE NO. 23-3016-JWL**

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Plaintiff is a prisoner at the El Dorado Correctional Facility ("EDCF"), in El Dorado, Kansas. The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 5). This matter is before the Court for screening of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A.

### I. Nature of the Matter before the Court

Plaintiff includes the following allegations in his Amended Complaint (Doc. 9) and attachments. On March 8, 2021, while at Hutchinson Correctional Facility ("HCF"), Plaintiff's right front tooth (#8) was broken in a fight with another inmate. Plaintiff was taken to the HCF medical clinic where the doctor noted that Plaintiff reported constant pain of 10/10 and that his tooth was broken off near the gum line. Doc. 9-2, at 4. Plaintiff was seen later that same day by Dr. Chen for a dental exam. Dr. Chen noted that tooth #8 was fractured, and the incisal 2/3rds of the crown was lost. Pulp was visible. *Id.* at 7. He placed a temporary covering on the tooth to shield it from air and advised Plaintiff to return after the tooth had calmed down for further examination and a decision on treatment. *Id.*

On March 15, 2021, Plaintiff was seen by Dr. Chen for follow up. Dr. Chen documented that Plaintiff said he did not want to have the tooth pulled and reported that the tooth does not hurt much. *Id*. at 11. Later that day, however, the temporary covering fell off. Plaintiff was seen by Dr. Chaney, another dentist at HCF, on March 16, 2021. Dr. Chaney found pulpal tissue was exposed and hanging out of the pulp chamber. He noted, "Root canal therapy (RCT) is indicated. KDOC regulations do not provide for RCT treatments." *Id*. at 12. He listed the treatment options as "1. re-cover with a composite resin build-up over the exposed pulpal tissue, 2. solicit special permission to send pt to outside DDS for RCT procedure; 3. extraction of tooth #8." *Id*.

Dr. Chaney then noted that he visited Plaintiff later on March 16, 2021, and told him that "[t]he Kansas State Dental Director stated DOC will not 1) provide and pay for RCT treatment; 2) RCT treatment is not treatment offered under DOC regulations; and 3) KDOC will not pay for officers to escort pt outside of the facility for such treatment." *Id*. at 13. Plaintiff reports that Dr. Chaney said he had been directed to extract Plaintiff's tooth. Plaintiff refused extraction of the tooth because both Dr. Chen and Dr. Chaney had recommended a root canal and crown. Moreover, Plaintiff is only 32 years old and, since two dentists have said saving the tooth is possible, he would like to do so.

Plaintiff was seen by Dr. Chaney again on March 17, 2021. Dr. Chaney prescribed antibiotics to control or prevent infection of the broken tooth. *Id.* at 15. He also explained to Plaintiff that he needed to open up the tooth to remove pulpal tissue and provide a pathway for drainage. The procedure was performed on March 18, 2021. *Id.* at 17.

On March 29, 2021, Plaintiff again saw Dr. Chaney. He reported severe pain and blood coming from the hole drilled in the tooth on March 18. Dr. Chaney instructed Plaintiff to take

Ibuprofen and Tylenol for the pain and ordered x-rays of Plaintiff's skull, jaw, and facial bones. *Id*. at 22. The x-rays were completed on March 30, 2021. No fractures were noted. *Id*. at 33-36.

Plaintiff was seen by medical staff on March 27, 2021, for complaints of upset stomach and diarrhea from the antibiotics. *Id*. at 25.

On May 5, 2021, in response to Plaintiff's grievance about treatment for his broken tooth, Dr. Cannon, described by Plaintiff as the Regional Director of Dental Services for Centurion, the contracted dental provider for the KDOC, stated as follows: "#8 has a large percentage of crown missing and is fractured to gum line in the back of tooth. It would need more than just a root canal to fix it. It would need extensive crown and bridge work just to place a crown. We will not do custom crown and bridge work to this tooth. My prescription is extraction #8." Doc. 9-1, at 3.

Plaintiff states that he has been in continuous pain since the tooth broke and has suffered multiple infections of his gum. He alleges that Centurion and/or the KDOC have what is effectively if not expressly an "extraction only" policy. He claims a violation of his rights under the Eighth Amendment.

Plaintiff names as defendants the Kansas Department of Corrections; Jeff Zmuda, Secretary of Corrections; Darcie Holthaus, Secretary of Corrections Designee; Centurion; (FNU) Cannon, Regional Director of Dental Services, Centurion; and Tommy Williams, Warden, EDCF. Plaintiff seeks redress in the form of a declaratory judgment that a blanket policy of denying prisoners root canals and crowns based on financial reasons is unconstitutional, as well as compensatory and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did

it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. Discussion**

    **A. Eighth Amendment**

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v.*

*County of Washington*, 282 Fed.Appx. 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)). "[D]ental care is one of the most important medical needs of inmates." *Ramos,* 639 F.2d at 576.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. See *Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel

between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).

However, "[d]eliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment." *Ramos*, 639 F.2d at 575; *see also Carlucci v. Chapa*, 884 F.3d 534, 539–40 (5th Cir. 2018) (reversing district court's dismissal of pro se plaintiff's Eighth Amendment claim where plaintiff alleged that he wanted the recommended dental treatment, not an alternative treatment).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the HCF and EDCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

### B. Defendants

The State of Kansas and its agencies, such as the KDOC, are absolutely immune from suit for money damages under the Eleventh Amendment.  Consequently, suits against the State and its agencies are barred, absent consent, regardless of the relief sought.  *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Trujillo v. Williams*, 465 F.3d 1210, 1214 n.1 (10th Cir. 2006) (citing *ANR Pipeline*

*Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998) ("[A] citizen's suit against a state agency is barred by the Eleventh Amendment just as surely as if the suit had named the state itself.)); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It does not matter what form of relief a citizen might request in a suit against a state agency.")); *but cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (The Eleventh Amendment does not prevent suits against individual defendants in their official capacity for injunctive or declaratory relief, or against state officials in their individual capacities, or against private entities.).

Furthermore, the State and its agencies such as the Department of Corrections are not "persons" that Congress made amenable to suit for damages under § 1983. *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see also Will*, 491 U.S. at 64, 71 ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). For these reasons, the KDOC is dismissed from this action.

Moreover, an official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Plaintiff includes no allegations demonstrating the personal participation of Defendant Williams in the alleged constitutional violation. Defendant Williams is also dismissed from this action.

Finally, the allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).  The only apparent participation of Defendant Holthaus is that she signed a letter responding to Plaintiff's grievance. *See* Doc. 9-1 at 15.  She is dismissed from this action.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Kansas Department of Corrections, Tommy Williams, and Darcie Holthaus are **dismissed** from this action**.**

**IT IS FURTHER ORDERED** that**:**

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve the Defendant Zmuda.  The Clerk of the Court shall prepare summons to be served pursuant to Rule 4(c)(3) on defendants Centurion and (FNU) Cannon by the U.S. Marshal at no cost to Plaintiff.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) Officials responsible for the operation of HCF and EDCF are directed to undertake a review of the subject matter of the Complaint:

   a. To ascertain the facts and circumstances;

    b.  To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c.  To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

  (4)  Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

  (5)  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

  (6)  Authorization is granted to the officials of HCF and EDCF to interview all witnesses having knowledge of the facts, including Plaintiff.

  (7)  No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

  (8)  Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated February 16, 2023, in Kansas City, Kansas.**

<u>S/   John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**