UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES RICHARD DUDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.  23-3016-HLT-ADM |
| | ) |
| KANSAS DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the court on pro se plaintiff James Richard Dudley's ("Dudley") Motion to Supplement Complaint. (ECF 48.) Dudley is a prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas.[1] By way of this motion, Dudley seeks leave to amend his complaint to add previously dismissed defendants back into the case and to assert retaliation claims against several prison officials at the EDCF where he is currently housed. For the reasons discussed below, the court finds that Dudley's motion is untimely and that the belated amendment would unfairly prejudice the current defendants in the case, Centurion and Dr. Fred Cannon ("Current Defendants"). Accordingly, Dudley's motion to amend his complaint is denied.

**I.   BACKGROUND**

On January 20, 2023, Dudley filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Kansas Department of Corrections ("KDOC"); Jeff Zmuda, Secretary of Corrections for

---

[1] At all relevant times Dudley was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas. At the time his cause of action arose, he was housed at the Hutchinson Correctional Facility. Dudley subsequently transferred to the Lansing Correctional Facility and is currently housed at the El Dorado Correctional Facility.

KDOC; Darcie Holthaus, Secretary of Corrections Designee for KDOC; Centurion, the provider employed by the State of Kansas to provide healthcare, dental care, and mental health care to prisoners in the custody of the Kansas Department of Correction; (FNU) Cannon, Regional Director of Dental Services at Centurion; and Tommy Williams, Warden of EDCF. (ECF 1.) On February 6, 2023, Dudley filed an amended civil rights complaint with leave of the court against the same defendants. The amended complaint amended the case caption that incorrectly named a defendant as Cannan (instead of Cannon) and attached one additional exhibit to the complaint. (*See* ECF 6, 8, 9.)

Dudley's amended complaint alleges that, while at Hutchinson Correctional Facility ("HCF") on March 8, 2021, Dudley's right front incisor tooth was broken in a fight with another inmate. (ECF 9-1, at 4; ECF 9-2, at 4.) Dudley was taken to the HCF medical clinic where the doctor noted that he reported constant pain of 10/10 and that his tooth was broken off near the gum line. (ECF 9-2, at 2, 4.) Dudley was seen later that same day for a dental exam by Dr. Chen. Dr. Chen noted that tooth #8 was fractured, the incisal 2/3rds of the crown was lost, and pulp was visible. (ECF 9-2, at 7.) He placed a temporary covering on the tooth to shield it from air and advised Dudley to return after the tooth had calmed down for further examination and a decision on treatment. (*Id*.)

On March 15, Dr. Chen saw Dudley for follow up. Dr. Chen documented that Dudley said he did not want to have the tooth pulled and reported that the tooth does not hurt much. (*Id*. at 11.) Later that day, however, the temporary covering fell off. (ECF 9-1, at 4.)

On March 16, another dentist at HCF, Dr. Chaney, saw Dudley. (ECF 9-2, at 12.) Dr. Chaney found pulpal tissue was exposed and hanging out of the pulp chamber. He noted, "Root canal therapy (RCT) is indicated. KDOC regulations do not provide for RCT treatments." (*Id*.)

2

He listed the treatment options as "1. re-cover with a composite resin build-up over the exposed pulpal tissue, 2. solicit special permission to send pt to outside DDS for RCT procedure; 3. extraction of tooth #8." (*Id*.)  Dr. Chaney then noted that he visited Dudley later that day and told him that "[t]he Kansas State Dental Director stated DOC will not 1) provide and pay for RCT treatment; 2) RCT treatment is not treatment offered under DOC regulations; and 3) KDOC will not pay for officers to escort pt outside of the facility for such treatment." (*Id*. at 13.)  Dudley alleges that Dr. Chaney said he had been directed to extract Dudley's tooth, but Dudley refused extraction of the tooth because both Dr. Chen and Dr. Chaney had recommended a root canal and crown.  (ECF 9, at 2.)

On March 17, Dr. Chaney saw Dudley again.  Dr. Chaney prescribed antibiotics to control or prevent infection of the broken tooth.  He also explained to Dudley that he needed to open up the tooth to remove pulpal tissue and provide a pathway for drainage.  (ECF 9-2, at 15.)  That procedure was performed on March 18.  (*Id*. at 17.)  When Dr. Chaney saw Dudley again on March 25, Dudley told him he still wanted the root canal therapy and "does not understand why the State of Kansas will not provide the treatment since the state is responsible for providing necessary medical/dental care." (*Id*. at 22.)

Dudley was next seen by medical staff on March 27 for complaints of upset stomach and diarrhea from the antibiotics.  (*Id*. at 25.)  On March 29, Dudley again saw Dr. Chaney.  He reported severe pain and blood coming from the hole drilled in the tooth on March 18.  Dr. Chaney instructed Dudley to take Ibuprofen and Tylenol for the pain and ordered x-rays of Dudley's skull, jaw, and facial bones.  (*Id*. at 27.)  The x-rays were taken on March 30.  No fractures were noted. (*Id*. at 33-35.)

On May 5, 2021, in response to Dudley's March 29 grievance about treatment for his broken tooth, Dr. Cannon (described by Dudley as the Regional Director of Dental Services for Centurion) stated as follows: "#8 has a large percentage of crown missing and is fractured to gum line in the back of tooth.  It would need more than just a root canal to fix it.  It would need extensive crown and bridge work just to place a crown.  We will not do custom crown and bridge work to this tooth.  My prescription is extraction #8." (ECF 9-1, at 3.)

Dudley's amended complaint alleges that he has been in continuous pain since the tooth broke and has suffered multiple gum infections.  (ECF 9, at 3.)  He alleges that Centurion and/or KDOC have what is effectively if not expressly an "extraction only" policy to deny prisoners root canals and crowns to cut costs on dental treatment for prisoners.  (*Id*.)  He claims this violates his rights under the Eighth Amendment.  (*Id*. at 6.)  Dudley seeks redress in the form of a declaratory judgment that a blanket policy of denying prisoners root canals and crowns based on financial reasons is unconstitutional, as well as compensatory and punitive damages.  (*Id*. at 6-7.)

On February 15, 2023, Dudley filed a motion for leave to amend his complaint, which made no apparent changes to the amended complaint but did seek to add a request for a restraining order.  (ECF 10.)  On February 16, the court denied the motion to amend but directed the Clerk of the Court to file the pages that encompassed Dudley's request as a Motion for Temporary Restraining Order and Preliminary Injunction.  (ECF 11, 12.)  That same day the court screened Dudley's amended complaint pursuant to 28 U.S.C. § 1915A and entered a Memorandum and Order dismissing KDOC from the action on grounds of Eleventh Amendment immunity and because KDOC is not a "person" that Congress made amenable to suit for damages under § 1983. (ECF 13, at 7-8.)  The court further dismissed EDCF Warden Tommy Williams from the suit because Dudley's complaint "includes no allegations demonstrating the personal participation of

4

Defendant Williams in the alleged constitutional violation." (*Id*. at 8.) The court likewise dismissed Darcie Holthaus, Secretary of Corrections Designee for KDOC, because Dudley's allegation that she signed a letter responding to Dudley's grievance was insufficient to show personal participation under § 1983. (*Id*. at 9.) The Court ordered KDOC to submit a *Martinez* report to assist in screening Dudley's claims against Defendants Zmuda, Centurion, and Dr. Cannon. (*Id*. at 7, 9.) The court further ordered that the remaining defendants be served. (ECF 14.) On February 17, the court denied Dudley's motion for injunctive relief. (ECF 15.)

After KDOC submitted a *Martinez* report (ECF 26), the court, on May 26, further screened Dudley's amended complaint pursuant to 28 U.S.C. § 1915A and entered an order dismissing Jeff Zmuda, Secretary of Corrections for KDOC. (ECF 30.) The court reasoned that "Zmuda had no direct involvement with any decisions regarding Plaintiff's dental care, and the Amended Complaint does not contain anything more than conclusory allegations of Zmuda's participation in establishing policy." (ECF 30, at 2.) However, the court ruled that Dudley's amended complaint survived screening against the remaining defendants and ordered them to answer or otherwise respond to Dudley's claims. (*Id*. at 3.) Centurion and Dr. Cannon filed answers on July 26. (ECF 32, 33.)

On August 2, the court entered a scheduling order that required the parties to file any motions for leave to amend the complaint or to add parties by September 29. (ECF 36, at 1.) No party filed a motion to amend by that deadline. The scheduling order also required the parties to serve any discovery requests by November 30. (*Id.* at 2.) The docket does not reflect that any discovery requests were served by that deadline, nor did Dudley request the court's permission to take any depositions. Defendants filed a summary judgment motion on October 31. (ECF 41.) Dudley, instead of filing a response to the summary judgment motion, filed the current motion to

5

amend on December 7. (ECF 48.) The court noted that Dudley's motion to amend also included a "Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction" and directed the clerk to file this portion as a separate motion seeking such relief; the court also stayed briefing on this motion pending a ruling on his motion to amend. (ECF 50, 51.)

Dudley's motion seeks leave to amend his complaint to assert claims against 12 named defendants, three of which were previously dismissed from this action—Zmuda, Holthaus, and Williams. Likewise, Dudley appears to re-allege his grievance against KDOC, even though the court already dismissed KDOC based on Eleventh Amendment immunity. Dudley also seeks to add unknown EDCF and HCF officers to the suit. In addition, Dudley's proposed second amended complaint asserts—for the first time—retaliation claims against many of the proposed new defendants. Dudley alleges that some proposed defendants used excessive force and/or retaliated against him for filing this lawsuit by, for example, moving him into "more restricted area hard cells" or "box cells" and by taking his property, legal mail, and legal work. (ECF 48-1, at 5-7, 14.) Dudley otherwise re-alleges his deliberate indifference claims relating to an alleged blanket policy requiring tooth extractions. The Current Defendants oppose the amendment. They argue that Dudley filed his motion after the deadline for motions to amend set forth in the scheduling order, so his motion should be denied as untimely. They also argue that allowing amendment at this late date would unduly prejudice them. (ECF 52.)

## II.     ANALYSIS

The deadline for any motion to amend the complaint or to add parties was September 29, 2023. Where, as here, the scheduling order deadline for such motions has expired, the party seeking leave to amend must (1) demonstrate good cause for modifying the scheduling order under

6

FED. R. CIV. P. 16(b)(4), and (2) satisfy the standards for amendment under FED. R. CIV. P 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Whether to grant a motion to amend is within the court's sound discretion. *Id.*

### A. Dudley Has Not Shown Good Cause Under Rule 16

"Rule 16(b)(4) is arguably more stringent than Rule 15." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018). It provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite "diligent efforts." *Husky Ventures*, 911 F.3d at 1020. Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240. On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.* If a moving party fails to demonstrate good cause, the court may deny the motion on this basis alone. *See Gorsuch*, 771 F.3d at 1242 (declining to consider Rule 15(a) when there was not good cause under Rule 16(b)); *see also Husky Ventures*, 911 F.3d at 1019 (affirming district court's denial of a motion to amend for lack of good cause).

Dudley's motion lists three reasons why the court should allow leave to amend his complaint. First, he points out that he is a pro se prisoner, the case is complex, and this is his first "pursuit of a medical/dental suit." Second, he declares that he has exhausted his administrative remedies. Third, he says Defendants have been, and still are, retaliating against him for pursuing this litigation. (ECF 48.) But none of these reasons establish good cause for modifying the scheduling order deadline for filing a motion to amend the complaint.

There is nothing in the record from which the court could find that Dudley could not have met the September 29 motion to amend deadline despite diligent efforts. Even though Dudley is proceeding pro se, the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted). So proceeding pro se is not an excuse, nor is his status as a prisoner pursuing his first "medical/dental suit." This case is not particularly complex. And the court is unpersuaded by Dudley's argument to the effect that exhaustion of administrative remedies somehow precluded him from timely filing his motion to amend. His proposed amended complaint indicates he filed emergency grievances as late as February 2023 that were answered by March 2023. (ECF 48-1, at 23-27.) This was well before the September 29 deadline in the scheduling order. Finally, Dudley's contention that Defendants are retaliating against him for pursuing this litigation appears to be the same contention he raised in a "Notice to the Court" dated August 9 and filed August 11. (ECF 38.) Even though Dudley's proposed amended complaint provides two recent examples of ongoing retaliation occurring in early December, it also lists retaliatory action taken prior to September 29. (*See, e.g.*, ECF 48-1, at 6-7 (alleging the taking of his "property and legal mail" on September 20, 2023, and listing some of the same retaliatory action raised in his August Notice to the Court, such as confinement in hard cells and destruction of his legal mail).) Thus, it appears that Dudley was aware that he had a retaliation claim before the September 29 deadline for amendments to the pleadings, but he did not use diligent efforts to meet that deadline. Instead, Dudley waited until December 7 to seek leave to amend and apparently did so in lieu of responding to the Current Defendants' motion for summary judgment. This does not demonstrate diligence.

As for Dudley's attempt to add defendants previously dismissed (KDOC, Williams, Holthaus, and Zmuda), the court is unable to find, based on the record, that the proposed amendment is based on new information that Dudley learned through discovery or that the underlying law has changed such that the court should permit him to add these defendants back into the case. Dudley's proposed second amended complaint merely reiterates the same supporting facts and the same claims against these four defendants that the court dismissed during its preliminary screenings of the complaint. The court therefore denies Dudley's motion to amend as untimely because he has not demonstrated good cause under Rule 16 for the belated amendment.

### B. Dudley's Undue Delay in Seeking to Amend is Unduly Prejudicial to the Current Defendants

The court also denies Dudley's motion under Rule 15(a). When a party can no longer amend its pleading as a matter of course under Rule 15(a)(1), amendment is allowed "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend pleadings] when justice so requires." *Id.* In freely allowing leave to amend, the court provides litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Under Rule 15(a), a court may only withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 1. Undue Delay

Here, the Current Defendants argue Dudley's motion should be denied based on undue delay and as unduly prejudicial under Rule 15(a). (ECF 52, at 4-5.) While "[l]ateness does not of itself justify the denial of the amendment," a party that "delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975); 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1488 (2d ed. 1990)). "[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (quotation omitted). In evaluating what constitutes undue delay sufficient to deny a motion to amend, the district court must focus "primarily on the reasons for the delay." *Id.* at 1206. Denial is appropriate where the party seeking amendment "has no adequate explanation for the delay." *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that courts have "denied leave to amend in situations where the moving party cannot demonstrate excusable neglect," including "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend").

For essentially the same reasons stated above with respect to Dudley's lack of diligence in moving the court for leave to amend his complaint, the court also denies Dudley's motion based on undue delay under Rule 15(a). Dudley has been aware of the facts giving rise to his retaliation claims and his proposed addition of defendants for months. And Dudley has not offered any explanation to excuse his protracted delay in seeking leave to amend. *See Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) ("Given the untimely filing of the motion and

10

the lack of new information justifying the delay in adding a new claim, we find that the district court acted within its discretion in denying Woolsey's motion to amend").

### 2. Undue Prejudice

The most important factor in considering a motion to amend is "whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the [opposing parties] 'in terms of preparing their defense to the amendment.'" *Id*. at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Id*.

The Current Defendants argue that allowing amendment at this late juncture would unduly prejudice them in obtaining timely resolution of the § 1983 claims asserted against them regarding an alleged blanket policy requiring tooth extractions. They point out that their summary judgment motion (which was filed on October 31, 2023) is pending before the court, and permitting Dudley to add parties previously dismissed or add new retaliation claims against parties not involved in the underlying § 1983 claim would unduly delay resolution of the § 1983 claim, while obligating them to litigate Dudley's new, unrelated retaliation claims against other parties "that should more properly be brought in a separate suit." (ECF 52, at 4-5.) The court agrees. If Dudley's new claims were to survive screening pursuant to 28 U.S.C.S. § 1915, they would unduly delay this action by service of additional defendants, additional discovery, and the filing of additional dispositive motions. Under these circumstances, allowing the amendment would unduly prejudice the Current Defendants whose summary judgment motion is pending. *See Lynn v. Simpson*, No. 97-3209-JWL, 1999 WL 33177298 (D. Kan. Nov. 22, 1999) (denying plaintiff's motion to amend

to add additional defendants and new claims in excessive force case because the amendment would unduly delay the original action).

## III.  CONCLUSION

Dudley's motion to amend is untimely under the scheduling order, and he has not shown good cause for an extension of the deadline to accommodate the filing of this motion.  Dudley also unduly delayed in moving to amend, and the Current Defendants would be unduly prejudiced by the proposed amendment.  For these reasons, the court denies Dudley's motion to amend.

**IT IS THEREFORE ORDERED** that plaintiff James Richard Dudley's Motion to Supplement Complaint (ECF 48) is denied.

**IT IS SO ORDERED.**

Dated February 13, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge